UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANGEL O. GRANILLO ARBALLO (A-240-394-196),

Petitioner,

v.

TONYA ANDREWS, WARDEN, GOLDEN STATE ANNEX,

Respondent.

No. 1:26-cv-5425 DC CSK

FINDINGS & RECOMMENDATIONS

Petitioner Angel O. Granillo Arballo (A-240-394-196), a citizen and native of Mexico, was admitted to the United States on or around August 15, 2014, on a B2 visa. On March 22, 2026, U.S. Immigration and Customs Enforcement ("ICE") detained petitioner. Petitioner, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] This habeas action concerns petitioner's detention. For the reasons that follow, the Court recommends that respondent's motion to dismiss be denied, the petition be granted and petitioner be provided a bond hearing.

///

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I. FACTUAL BACKGROUND[2]

Petitioner is a 24 year old national and citizen of Mexico. (ECF No. 7-1 at 1.) At age 12, petitioner was admitted to the United States on or around August 15, 2014, on a B2 visa. (ECF No. 6-1 at 2.) The visa expired on January 15, 2015. (Id.) Following petitioner's pretrial release by a Leon County Superior Court Judge, on March 22, 2026, petitioner was driven from county jail by two county jail officials to U.S. Immigration and Customs Enforcement ("ICE") and taken into ICE custody. (ECF No. 9 at 9-10.) Petitioner was served with an arrest warrant. (ECF No. 6-2 at 1.)

On March 23, 2026, petitioner was issued a Notice to Appear in Immigration and Nationality Act ("INA") Section 240 (8 U.S.C. § 1229a) removal proceedings, which are standard removal proceedings.[3] (ECF No. 6-3.) The Notice to Appears claims petitioner is an arriving alien. (Id.) That same day, petitioner was provided a notice of custody determination advising he would be detained, and petitioner requested an immigration judge review the custody determination and requested a hearing before the immigration court. (ECF Nos. 6-4, 6-5.)

Petitioner does not have a final order of removal.[4] Petitioner has been in continuous detention since March 22, 2026. (ECF No. 1 at 4.)

## II. PROCEDURAL BACKGROUND

On July 13, 2026, petitioner filed the petition for writ of habeas corpus. (ECF No. 1.) On July 23, 2026, respondent filed a timely motion to dismiss. (ECF No. 6.) On August 10, 2026, after being granted an extension of time, petitioner filed a timely reply to the motion to dismiss.

---

[2] Petitioner filed a verified habeas petition. (ECF No. 1 at 8.) A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[3] Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

[4] Petitioner contends that his multiple transfers between various detention facilities across the country have deprived him of a timely hearing before an immigration judge, noting that his July 7, 2026 hearing date before an immigration judge was cancelled due to one of his transfers. (ECF No. 1 at 4.) In addition, he argues that the wrong categorization on the Notice to Appear prevented him from seeking a bond hearing. (Id.) The reference to "arriving alien" on the Notice to Appear apparently reflected that petitioner was detained under 8 U.S.C. § 1225(b). (Id.) In his reply, petitioner sets forth additional immigration court hearings that were impacted by his many transfers: May 4, 2026 and June 4, 2026. (ECF No. 9 at 2.)

(ECF No. 9.) On August 31, 2026, respondent filed a reply to petitioner's opposition to the motion to dismiss. (ECF No. 11.) On September 14, 2026, petitioner filed a surreply. (ECF No. 12.) Briefing is now complete.[5]

## III. SURREPLY

The Local Rules do not authorize the routine filing of a sur-reply. Nevertheless, a district court may allow a sur-reply "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." See Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. 2005). In the present case, respondent addressed petitioner's actions through counsel on August 3, 2026, which were not included in the July 23, 2026 motion to dismiss. Therefore, the Court will consider petitioner's surreply.

## IV. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court. The provisions of Rule 4, which are applicable to a petition filed pursuant to 28 U.S.C. § 2241, provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the

---

[5] On August 24, 2026, petitioner filed a second reply to the motion to dismiss. (ECF No. 10.) However, this ten page filing appears to be a duplicate of his ten page August 10, 2026 reply (See ECF No. 9).

district court, the judge must not dismiss the petition and direct the clerk to notify the petitioner." The Advisory Committee Notes to Rule 4 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to respondent's motion to dismiss, or after an answer to the petition has been filed.

**V. DISCUSSION**

The petition raises two specific claims for relief. (ECF No. 1 at 6.) In claim one, petitioner claims his detention violates the Fifth Amendment due process clause. (Id.) In claim two, petitioner argues that his prolonged detention without an individualized hearing before a neutral decision maker violates his due process rights. (Id.) In the motion to dismiss, respondent argues that the petition should be dismissed because petitioner, who is detained pursuant to 8 U.S.C.§ 1226(a), failed to show that his detention is unlawful or unconstitutional and failed to exhaust administrative remedies as to his custody status. (ECF No. 6 at 2-4.)

**A. Due Process Claims (Claims One and Two)**

In claims one and two, petitioner argues that he was detained in violation of his right to due process, and his detention is prolonged. Respondent does not address the merits of these due process claims in the motion to dismiss. (See ECF No. 6.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with

the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

This Court further observes that courts have found protected liberty interests where the government knew of the noncitizen's continued presence in the United States and yet took no action to detain the noncitizen for months or years after their visa expired. See Huang v. Blanche, No. 2:26-cv-02157-BAT, 2026 WL 2271901, at *1, 4 (W.D. Wash. July 15, 2026) (finding liberty interest where the noncitizen overstayed a tourist visa and applied for asylum, but was not arrested by ICE until over ten years after visa expired); Benipal v. Rokosky, No. 26-cv-01306-RM-CDB, 2026 WL 1355010, at *1, 10 (D. Ariz. Apr. 24, 2026), findings and recommendations adopted, 2026 WL 1352061 (D. Ariz. May 14, 2026) (finding that noncitizen who had overstayed his visa had a liberty interest in release where he had not been detained for years after his visa had expired, even though in that time he had been issued a deficient notice to appear, been granted permission to work in the United States, and filed an application to register permanent residence or adjust status); Kalkan v. Chestnut, No. 26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026), appeal dismissed sub nom Kalkan v. Chestnut, No. 26-3277, 2026 WL 2446315 (9th Cir. June 18, 2026) (petitioner with expired visa and pending asylum application had protected liberty interest where immigration officials did not promptly detain petitioner based

on expiration of that status); Kharitonova v. Albarran, No. 26-cv-01362-JSC, 2026 WL 531441, at *1-2 (N.D. Cal. Feb. 25, 2026) ("Petitioner [with expired visa] has a vested liberty interest in remaining free from detention as she has lived for the last 13 years. ... The government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' likewise gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.' ... The government's insistence Petitioner lacks a liberty interest because it never before sought to detain her is specious. ... Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."). Here, petitioner has a protected liberty interest in remaining out of custody where he lived in the United States for over 11 years after his visa expired. The government knew of petitioner's continued presence in the United States following the expiration of his visa, as he was employed and had law enforcement contacts, yet the government took no action to detain petitioner for over 11 years after his visa expired. During that time, petitioner established a family, employment, and community ties; and petitioner has one United States citizen child and his significant other is currently pregnant with petitioner's second child. (ECF No. 1 at 4.) Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous

deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 11 years after his visa expired, petitioner was free from immigration detention before his March 22, 2026 detention. Petitioner worked and raised a family with his significant other. (ECF No. 1 at 4.) The over 11 year duration of his freedom from immigration detention elevates and underscores his interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondent does not contend that petitioner is or was a flight risk or a danger to the community. (See generally ECF No. 6.) In addition, although respondent claims petitioner was encountered by immigration officials while attempting to post bond, which petitioner disputes, respondent does not contend that petitioner has a criminal history. (See id.) Petitioner disputes the criminal history recounted on the Form I-213, and states his criminal history is nonviolent. (ECF Nos. 1 at 6, 7; 9 at 9-10.) Here, petitioner has been detained for over six months without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community. While respondent argues that petitioner sought an

extension of time for his bond hearing, and petitioner contends the extension was necessary for his attorney to shepherd the evidence necessary to properly represent petitioner at the hearing, this does not alter the fact that petitioner previously had a hearing scheduled before an immigration judge on July 7, 2026, which did not occur because immigration officials transferred petitioner to another detention facility.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). Respondent points to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on his due process claim.

**B. Exhaustion**

Respondent argues that petitioner failed to exhaust his administrative remedy. (ECF No. 6 at 2-4.) 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because exhaustion is not required by statute, it is not jurisdictional. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by

Reno v. Koray, 515 U.S. 50, 54-55 (1995) (citing Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987)). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his [or her] administrative remedies before proceeding in court." Id. "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal citation and quotation marks omitted). However, the court may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. Laing, 370 F.3d at 1000-01 ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available.").

Given that petitioner was allowed to remain free from immigration detention for over 11 years after the expiration of his visa, worked, and has a nonviolent criminal history, this Court finds that petitioner may suffer irreparable injury without immediate judicial relief. The Court concludes that the prudential exhaustion requirement should be waived.

**C. Remaining Claims**

In the claims section of his petition, petitioner incorporates prior paragraphs, some of which duplicate the due process claims addressed above. (ECF No. 1 at 4-6.) Petitioner argues that repeated transfers across the country violated his due process rights, deprived him of meaningful access to the courts and constituted unconstitutional interference. (Id. at 5-6.) In addition, he argues respondent's actions disrupted his family unity, and his continued civil detention has become excessive in relation to its regulatory purpose. (Id. at 6.) This Court declines to reach petitioner's remaining claims because petitioner is entitled to relief on his due process claims. See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not

addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

## VI. CONCLUSION

In summary, the Court recommends that respondent's motion to dismiss be denied, and the petition for writ of habeas corpus be granted on due process grounds (claims one and two).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on due process grounds.
2. Respondent's motion to dismiss (ECF No. 6) be DENIED.
3. Respondent be ordered to provide petitioner with a bond hearing before an immigration judge/ neutral decisionmaker within **fourteen (14) days** of the adoption of these findings and recommendations where respondent bears the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify continued detention. Respondent must provide notice to petitioner and if petitioner has counsel, also petitioner's counsel, with at least seven (7) days' notice before the bond hearing. If petitioner has counsel, petitioner shall be allowed to have counsel present at any such hearing.
4. Given petitioner's pro se status, respondent be directed to file, within seven days of the adoption of these findings and recommendations, a status report addressing petitioner's status.
5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7) days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven (7) days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 28, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/gran5425.mtd.2241.imm.BOND